**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DIANNE LYNN SMITH,

                Plaintiff,

vs.                                                   Case No.  3:12-cv-1092-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

Dianne Lynn Smith ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for supplemental security income ("SSI"). Her alleged inability to work is based upon "[s]evere anxiety,[ ]fibromyalgia, sleep apnea,[ ] depression, [and ]knee surgery[.]"  Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed December 19, 2012, at 163.  On February 18, 2009, Plaintiff filed an application for SSI, alleging an onset disability date of December 1, 2002. Tr. at 128-34.  Plaintiff's claim was denied initially, Tr. at 63, 65-67, and was denied upon reconsideration, Tr. at 64, 75-77.

On September 15, 2010, an Administrative Law Judge ("ALJ") convened a hearing, but the hearing was continued.  Tr. at 35-38.  The continuance was necessary because it had recently been discovered that Plaintiff filed "a prior application that had been allowed and

_____

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed December 20, 2012; Reference Order (Doc. No. 15), entered January 2, 2013.

then benefits discontinued due to the resources and income issue back more than two years ago," and Plaintiff's counsel needed more time to develop the record. Tr. at 37. The hearing reconvened on November 23, 2010, during which Plaintiff and a vocational expert ("VE") testified. Tr. at 39-62. Plaintiff was represented by an attorney at the hearing. Tr. at 39. At the time of the hearing, Plaintiff was forty-seven (47) years old. Tr. at 43.

The ALJ issued an unfavorable Decision on December 13, 2010, finding Plaintiff not disabled since the date the application was filed. Tr. at 19-29. On August 21, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. Plaintiff then commenced this action on October 9, 2012 under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether the ALJ erred in "not crediting" the opinions of two of Plaintiff's treatment providers (a physician and a psychiatrist) and the opinion of an examining psychologist; and whether the ALJ erred in "fail[ing] to analyze [Plaintiff's] allegations of upper extremity limitations" and spine problems in assessing Plaintiff's residual functional capacity ("RFC"). Plaintiff's Brief (Doc. No. 19; "Pl.'s Br."), filed March 1, 2013, at 1. On May 29, 2013, Defendant filed a memorandum addressing the issues raised by Plaintiff. See Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for reconsideration of the various medical opinions. Because the ALJ's further

-2-

consideration of those opinions may have an impact on the factual findings relating to Plaintiff's second issue, this issue is not addressed by the Court.  See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 21-29.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since January

---

[2]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

26, 2009, the alleged onset date." Tr. at 21 (emphasis and citation omitted).  At step two,

the ALJ found that Plaintiff suffers from "the following severe impairments: anxiety, affective

disorder, fibromyalgia, sleep apnea, and disorders of the knees." Tr. at 21 (emphasis and

citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation

omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] needs to avoid ladders or unprotected heights; [Plaintiff] needs to avoid the operation of heavy moving machinery; [Plaintiff] needs a low stress work environment; [Plaintiff] needs simple tasks; [Plaintiff] may only occasionally bend, crouch, kneel, stoop, squat, or crawl; [Plaintiff] needs to avoid the operation of foot controls; [Plaintiff] has a 10-pound maximum weight lift limit; and [Plaintiff] needs to avoid the push/pull of arm controls.

Tr. at 23 (emphasis omitted).  At step four, the ALJ found Plaintiff "is unable to perform any

past relevant work" as a "cook helper" and a "home health aide[.]" Tr. at 27 (emphasis

omitted from first quotation, capitalization omitted from second and third quotations).  At step

five, after considering Plaintiff's age (forty-five (45) when the application was filed), education

("limited"), work experience, and RFC, the ALJ determined that "there are jobs that exist in

significant numbers in the national economy that [Plaintiff] also can perform[.]" Tr. at 28

(emphasis and citation omitted).  Those jobs include "hospital products assembler," "ticket

taker," and "lens inserter[.]" Tr. at 28 (capitalization omitted).  The ALJ concluded that Plaintiff

"has not been under a disability . . . since January 26, 2009, the date the application was

filed." Tr. at 29 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

There are three medical opinions at issue: that of Hussein Zabad, M.D. (Plaintiff's primary care doctor, Tr. at 52); that of Umesh Mhatre, M.D. (Plaintiff's treating psychiatrist, Tr. at 49); and that of Sherry V. Risch, Ph.D. (an examining psychologist).  The undersigned

first summarizes the applicable law with respect to medical opinions, then summarizes the various opinions, and lastly discusses the ALJ's analysis of them.

## A. Applicable Law Relating to Medical Opinions[3]

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation

omitted).  Similarly, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence.  Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'"  Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

**B. Opinions at Issue**

**1. Dr. Zabad (treating physician).**  On January 29, 2007, Dr. Zabad completed a Physical Residual Functional Capacity Questionnaire.  Tr. at 761-65.  Dr. Zabad had been treating Plaintiff since September 2002.  Tr. at 761.  The diagnosis is listed as "FMR," and the prognosis is "fair."  Tr. at 761 (capitalization omitted from second quote).  According to Dr. Zabad, Plaintiff also has psychological conditions that affect her physical condition.  Tr. at 762.  Plaintiff's pain and other symptoms can constantly be expected to interfere with attention and concentration.  Tr. at 762.  Plaintiff is severely limited in her ability to deal with work stress.  Tr. at 763.

According to Dr. Zabad, Plaintiff can walk one-half of one city block without rest.  Tr. at 763.  She can sit five minutes at a time and stand five minutes at a time.  Tr. at 763.  She can sit and stand/walk less than two hours per day.  Tr. at 763.  She needs to walk around every sixty minutes for five minutes at a time.  Tr. at 763.  Plaintiff can occasionally lift ten pounds or less, and she can never lift any more than that.  Tr. at 764.  She has significant limitations in repetitive reaching, handling, and fingering.  Tr. at 764.

Dr. Zabad opined that Plaintiff needs a job that permits shifting positions at will.  Tr. at 763.  Plaintiff can be expected to need eight breaks per day lasting fifteen minutes each.  Tr. at 764.  Plaintiff can be expected to be absent from work more than three times per month.  Tr. at 765.

**2. Dr. Mhatre (treating psychiatrist).**  On January 23, 2007, Dr. Mhatre completed a Mental Residual Function Capacity Assessment.  Tr. at 758-59.  According to Dr. Mhatre, Plaintiff is moderately limited in the following areas: ability to understand and remember

locations and work-like procedures; ability to carry out detailed instructions; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; ability to be aware of normal hazards and take appropriate precautions; ability to travel in unfamiliar places or use public transportation; and ability to set realistic goals or make plans independently of others.  Tr. at 758-59.

Dr. Mhatre opined Plaintiff is markedly limited in the following areas: ability to understand and remember very detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted by them; and ability to respond appropriately to changes in the work setting.  Tr. at 758-59.

**3. Dr. Risch (examining psychologist).**  Dr. Risch examined Plaintiff on October 28, 2010 and completed a report, a Psychiatric Review Technique form, and a Mental Residual Function Capacity Assessment all on October 31, 2010, Tr. at 845-51 (report), 828-40 (form), 842-43 (assessment).   According to Dr. Risch, as a result of Plaintiff's affective, bipolar II, anxiety-related, pain, and personality disorders, Plaintiff has marked

limitations in the areas of maintaining social functioning; maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration.  Tr. at 831-38.  Even a minimal increase in mental demands or change in the environment would be predicted to cause Plaintiff to decompensate.  Tr. at 839.

In terms of specific limitations, Dr. Risch opined Plaintiff has moderate limitations in the areas of ability to remember locations and work-like procedures; ability to sustain an ordinary routine without special supervision; ability to make simple work-related decisions; ability to ask simple questions or request assistance; ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; and ability to be aware of normal hazards and take appropriate precautions.  Tr. at 842-43.

According to Dr. Risch, Plaintiff is markedly limited in the following areas: ability to understand and remember very detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to work in coordination with or proximity to others without being distracted by them; ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to travel in unfamiliar places or use public

transportation; and ability to set realistic goals or make plans independently of others.  Tr.

at 842-43.

## C. Analysis of ALJ's Findings

### 1. Dr. Zabad (treating physician).  As to Dr. Zabad, the ALJ stated:

[T]he undersigned has considered the medical opinion of . . . Dr. Zabad, and the undersigned has given the doctor's opinion some weight.  For example, the undersigned has determined that [Plaintiff] is only able to lift 10 pounds in weight and must avoid the push/pull of arm controls.  However, to the extent that the doctor's opinion contains greater or additional restrictions than the assessed [RFC], the undersigned gives his opinions little weight, as those restrictions are not consistent with the medical evidence of record or supported by the record as a whole.  As an example, the doctor's own treatment notes do not support the extreme limitations suggested on the doctor's RFC questionnaire.

Tr. at 26 (citations omitted).

The parties disagree regarding whether the ALJ articulated with sufficient specificity

his reasons for discounting Dr. Zabad's opinion.  See Pl.'s Br. at 12-14; Def.'s Mem. at 9.

The undersigned finds that the ALJ did not state with the requisite specificity his reasons for

discounting the opinion.  The ALJ merely recited  recognized "good cause" reasons for

discounting Dr. Zabad's opinion, i.e., the opinion is not consistent with the medical evidence

of record or the doctor's treatment notes.  Without more, this recitation is insufficient.  Cf.

Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18,

2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating

physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the

treating physician's] opinion was inconsistent with other record medical evidence"); Russ v.

Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009)

(unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient"

when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision).

Without the ALJ clearly articulating an explanation for rejecting Dr. Zabad's opinion, judicial review is frustrated because the Court cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.  Further compounding the problem is that the ALJ did not discuss any of the medical evidence relating to Dr. Zabad, except to find in conclusory fashion that "[g]iven the limited and conservative treatment prescribed, it is clear that the restrictions suggested by this treater are not consistent with the longitudinal history reflected in the medical record." Tr. at 24.  This statement neither makes clear that the ALJ actually considered the medical evidence from Dr. Zabad, nor does it aid the Court in determining whether the decision to give "some weight" to Dr. Zabad's opinion is rational and supported by substantial evidence.   Remand is required for further consideration of the opinion.

**2. Dr. Mhatre (treating psychiatrist).**  As to Dr. Mhatre, the ALJ stated:

> The undersigned has also considered the medical opinion of Dr. Mhatre . . .; however, the undersigned has accorded little weight to the doctor's opinion because the doctor's opinion is inconsistent with his own treatment notes.  The treatment notes from Baptist Behavioral Health indicate that medication has managed [Plaintiff's] mental impairments.  For example, on January 29, 2008 the doctor indicated that [Plaintiff's] depression was under control, and he indicated that [Plaintiff] has only "some" anxiety.  On June 23, 2009, the doctor noted that [Plaintiff's] depression is manageable.  This inconsistency obviously renders the doctor's opinion as less persuasive.  Of note, even with the marked limitations, the doctor also opined that [Plaintiff] is not significantly limited in the ability to understand, remember, and carry out short and simple instructions or the ability to make simple work-related decisions.

Tr. at 26 (citations omitted).  The ALJ also discussed similar alleged inconsistencies between Dr. Mhatre's opinion and his treatment notes at an earlier point in the Decision.  Tr. at 24-25.

The problem with the ALJ's discussion of Dr. Mhatre's opinion is that the ALJ only discussed a couple of treatment notes that tend to support the finding that "medication has managed [Plaintiff's] mental impairments," Tr. at 26, when there are quite a few of Dr. Mhatre's other treatment notes that do not support that finding, see, e.g., Tr. at 438 (January 13, 2009 note stating that "[t]he patient is very tearful, depressed and crying, frustrated about ongoing medical problems" and the treatment response is "[o]nce again deteriorating"); Tr. at 774 (March 31, 2009 note stating that "[t]he patient remains anxious and depressed" and the treatment response is "[p]artial"); Tr. at 826 (December 8, 2009 note stating that "[t]he patient continues to have some lingering depression" and treatment response is "[p]artial"); Tr. at 809 (June 12, 2010 note stating that "[c]learly the current medication has been only partially effective" and treatment response is "[i]mproving" but she is "anxious and depressed")[5]; Tr. at 854, 856 (September 7, 2010 note documenting Plaintiff's report of "'severe, severe, severe mood swings,'" among other ongoing problems) (purportedly quoting Plaintiff); Tr. at 857 (September 7, 2010 note stating that "anxiety and depression persist," Plaintiff cannot afford her medications due to "significant financial problems," and the treatment response is "[n]ot good without medicine").

Reading these treatment notes together with the notes cited by the ALJ shows that over time, Plaintiff's mental condition actually declined. Also, the ALJ did not discuss the fact that Plaintiff was not able to afford her prescriptions for her mental disorders by September 7, 2010 and was not able to take the medications. In sum, the reason given by the ALJ for

---

[5]     A duplicate of this note is found in the administrative transcript at page 820.

discounting Dr. Mhatre's opinion is not supported by substantial evidence in the record. Accordingly, the opinion must be reconsidered.

**3. Dr. Risch (examining psychologist).**  The ALJ relied in part on the "treatment notes from Putnam Behavioral Healthcare" (i.e., Dr. Mhatre's notes) in discounting Dr. Risch's opinion.  Tr. at 27.  Given the undersigned's above finding regarding these notes, further consideration of Dr. Rich's opinion is also required.

### V.  Conclusion

For the foregoing reasons, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reevaluate the medical opinions of Drs. Zabad, Mhatre, and Risch, and state with particularity the weight afforded; if the treating opinions are discounted, adequate reasons showing good cause for discounting shall be provided and shall be supported by substantial evidence;

(B)     Ensure that the other issue raised in this appeal is appropriately addressed, if necessary; and

(C)     Take such other action as may be necessary to resolve this claim properly.

2.     The Clerk is further directed to close the file.

3.     In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 12, 2014.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record